EDWARD BANGS _vs._ EZRA LINCOLN & another.

The individual liability of stockholders of officers of a manufacturing corporation for debts
of the corporation, under the Rev. Sts. _c._ 38, and _St._ 1851, _c._ 315, cannot be proved against
their estates in insolvency.

APPEAL from a decree of the court of insolvency, disallowing
a claim offered for proof against the separate estates of Charles
H. Mills, James K. Mills, Samuel A. Eliot and Edmund
Dwight, of which the defendants were assignees.    The case
was submitted to the judgment of the court upon the following
facts :

The plaintiff's claim was for the amount of a bill of exchange, (which had been duly presented, and protested for non-payment,) drawn and indorsed by the Whittenton Mills, a manufacturing corporation duly organized under the *St.* of 1836, *c.* 57, subject to the provisions of the Rev. Sts. *cc.* 38, 44, and in which all said insolvents were and long had been stockholders in different amounts, and all but Dwight officers.

The capital stock of the corporation was duly paid in, but no certificate thereof was made and recorded as required by the Rev. Sts. *c.* 38, § 17 ; nor any annual statement of the amounts of assessments voted and paid in, and of all existing debts, as required by § 22 ; nor any notice ever given by either of said insolvents to the stockholders of the excess of the debts of the corporation beyond their capital, and of his absence when such debts were contracted, or of his objection thereto, pursuant to § 25.

The plaintiff on the 15th of December 1857 commenced two actions to recover the amount of this bill of exchange ; one of contract against said corporation, in which said insolvents were summoned as stockholders ; and the other of tort against them as officers of the corporation ; in both of which the writs were served by attachment of real estate of the insolvents ; and which are still pending. The first publication of notice of the issuing of a warrant in insolvency was on the 11th of January 1858.

*B. R. Curtis & E. Bangs*, for the plaintiff. By *St.* 1838, *c.* 163, § 3, " all debts due and payable from " an insolvent debtor " at the time of the first publication of notice of issuing the warrant may be proved and allowed against his estate."

1. Upon the facts stated the insolvents, as stockholders of the Whittenton Mills, were jointly and severally liable for all the debts of the company. Rev. Sts. *c.* 38, §§ 16, 22. This obligation imposed by law upon the stockholders is a debt. 3 Bl. Com. 158. *Bullard* v. *Bell*, 1 Mason, 298. *Bordman* v. *Osborn*, 23 Pick. 295. *Gray* v. *Bennett*, 3 Met. 522. *Harger* v. *McCullough*, 2 Denio, 123.

The *St.* of 1808, *c.* 65, § 6, simply allowed an execution against the corporation to be levied upon the individual stock-

holders, without charging upon them any liability as for a debt; and was therefore held not to create a debt which could be proved against their estates in insolvency, either in their lifetime or after their death. *Kelton* v. *Phillips*, 3 Met. 61. *Ripley* v. *Sampson*, 10 Pick. 372. *Gray* v. *Coffin*, 9 Cush. 205, 206.

But the Rev. Sts. *c.* 38, § 16, like the *St.* of 1821, *c.* 38, expressly declare a liability of the stockholders to pay the debts of the corporation, without prescribing the remedy; and a new remedy was given by *St.* of 1838, *c.* 163, § 3 — by proof against the estate of the debtor — applicable to a different state of things from the remedies provided by the Rev. Sts. *c.* 38, and the *St.* of 1851, *c.* 315, and not affected thereby. In *Knowlton* v. *Ackley*, 8 Cush. 93, it was only decided, that particular remedies having been prescribed by statute, no other could be pursued.

Where a specific sum of money is absolutely due from the insolvent, it is a debt, within the meaning of this statute; and it is not material how or why it became due, nor by what form of action *in personam* the remedy must have been sought if insolvency had not intervened. *Ex parte Lingood*, 1 Atk. 240. *Marson* v. *Barber*, Gow R. 17. *Ex parte Harding*, 5 De Gex, Macn. & Gord. 367. *Langford* v. *Ellis*, 14 East, 202, note. *Ex parte Charles*, 16 Ves. 256, and 14 East, 198. 1 Eden B. L. (3d ed.) 132. *Utterson* v. *Vernon*, 3 T. R. 548, 549. *Chapple's case*, 5 De Gex & Sm. 400. Wordsworth on Joint Stock Companies, 8–11. *Ex parte Wood*, 1 Mont., Deac. & De Gex, 92. *Ex parte Marston*, Mout. & Chit. 576. *Twiss* v. *Massey*, 1 Atk. 67.

The bill in equity, provided by the Rev. Sts. *c.* 38, § 21, is a direct remedy to enforce a legal title, to recover a precise sum of money due, and must allege the same facts as an action of debt, which would at common law have been the appropriate remedy. The *St.* of 1851, *c.* 315, does not take away this remedy, but only regulates the alternative remedy of a levy of execution. Even if it is necessary to recover judgment against the corporation before bringing a bill in equity against the stockholders, the liability of the stockholders is not less a debt. *Harger* v. *McCullough*, and *Bullard* v. *Bell*, above cited. *In re Murphy*, 1 Sch. & Lef. 44. Indeed, the *St.* of 1853, *c.* 371, § 1, gave an action of contract in such a case.

2. All the insolvents except Dwight, being officers of the corporation, were, upon the facts stated, jointly and severally liable to the plaintiff for the amount of his claim. Rev. Sts. *c.* 38, § 19.

This liability is a debt, and having been absolutely due and payable before the first publication, is provable in insolvency against their separate estates. The nature of the liability is not affected by the remedy indicated ; but if it were, the form of action indicated by the statute, and those sanctioned by the courts for enforcing similar liabilities, show that such liabilities are regarded by the law as debts. Rev. Sts. *c* 38, § 29. *St.* 1829, *c.* 53, § 11. *Salem* v. *Andover,* 3 Mass. 436. *Bath* v. *Freeport,* 5 Mass. 325. *Bullard* v. *Bell,* 1 Mason, 243. *Porter* v. *Sayward,* 7 Mass. 377. *Whitehead* v. *Varnum,* 14 Pick. 523. *Simonson* v. *Spencer,* 15 Wend. 548. *Pledal* v. *Hundred de Thisleworth,* Sid. 263. 1 Chit. Pl. (5th ed.) 123. 2 Leigh's N. P. 710. 2 Inst. 650. It is neither qualified, contingent, nor unliquidated ; but complete, absolute, and ascertainable as to amount without the intervention of a jury.

3. The policy and intent of the insolvent law are the discharge of the honest debtor, who has surrendered all his property, from all his liabilities, except such as from their nature cannot be determined and ascertained by the machinery proper to a court of insolvency ; and the equal distribution of his property among all his creditors. The policy and intent of the statute imposing the liability on which this claim is founded are to provide the creditor of the corporation with an additional security. *Stedman* v. *Eveleth,* 6 Met. 120. *Bordman* v. *Osborn,* 23 Pick. 295. To exclude this claim from proof would be to take away that security at the moment when it is most needed, and would contravene the policy, not only of the statute imposing the liability, but also of the insolvent law. It would be inequitable not to allow the creditor to prove his claim under that insolvent law, the provisions of which have dissolved the attachment by which his claim was secured and would have been satisfied. Whenever two or more persons are liable for the same debt otherwise than as partners, the creditor may prove against the estates of each. *Weston, appellant,* 12 Met. 1.

The remedy given by the Rev. Sts. *c.* 38, § 33, to any officer who shall pay any debt of the corporation will pass to his assignee in insolvency by the assignment. *St.* of 1838, *c.* 163, § 5

*A. H. Fiske & E. R. Hoar*, for the defendants.

BIGELOW, J. The claim of the plaintiff, which he seeks to prove against the separate estates of the insolvents in the hands of the defendants as assignees, is a debt due from a manufacturing corporation of which all the insolvents were stockholders and most of them officers. To entitle him to make such proof, it is necessary that he should make it appear that it was a debt due and payable from each of them at the time of the first publication of the notice of the issuing of the warrant against their separate estates ; or a debt then absolutely due, although not payable till afterwards. If it cannot be brought within either branch of this description of debts, then it is clear that it cannot be included within the enumeration of other claims which are provable against the estates of insolvent debtors; and that it must fall within the provisions of *St.* 1838, *c.* 163, § 3, which excludes all other claims not therein specified from proof.

The case therefore raises the question, whether the liability to which the officers and members of manufacturing corporations are in certain cases made subject by the Rev. Sts. *c.* 38, in connection with *St.* 1851, *c.* 315, can in any just or proper sense be deemed the separate debt of each officer or stockholder.

Looking first at the provisions of these statutes, so far as they are applicable to stockholders, it is very clear that the liability which they create does not make the debts of the corporation the direct, separate and private debts of each stockholder. It is true that the liability is declared in very broad and general terms. The provision is that " the members shall be jointly and severally liable for all debts and contracts made by such company." But how liable ? Not to an action in favor of the creditor against each or all of them as upon a debt for which they are jointly and severally liable. Such an action could not be maintained. *Knowlton* v. *Ackley*, 8 Cush. 97. To ascertain the nature of the liability, it is necessary to look at the means by which it can be enforced. These will indicate the

nature of the right which it was the intention of the legisla-ture to create. By proceedings at law under *St.* 1851, *c.* 315, § 3, a stockholder can be held liable only after judgment and execu-tion for the debt have been obtained against the corporation, and a demand has been made on them for the payment of the debt, which has been refused, and a failure to find the property of an officer of the company wherewith to satisfy the execution. *Thayer* v. *Union Tool Co.* 4 Gray, 75. *Denny* v. *Richardson,* 4 Gray, 274. Under these provisions it cannot be contended that the liability is direct, positive and absolute, as for a debt due from the stockholder. It is only limited, collateral, and con-tingent on the failure of the corporation and officers to pay it. How then can it be held to be a debt due from the insolvents, in the sense of the insolvent law ? Taking the provisions of the Rev. Sts. *c.* 38, providing for the liability of individual stock-holders for the debts of the corporation, in connection with those of *St.* 1851, *c.* 315, they are in substance very similar to those of *St.* 1808, *c.* 65, § 6, which was never held to have made the cor-porate debts to be due directly from the stockholders, but only to have created a special and limited liability. The case of *Kelton* v. *Phillips,* 3 Met. 61, in which it was held that a liability under that statute could not be proved as a debt against the estate of a stockholder in insolvency would seem to be quite de-cisive of the present case.

But it is urged very strenuously in behalf of the plaintiff, that although the remedy at law against the stockholder may be such as to show that his liability is indirect and contingent, yet by the Rev. Sts. *c.* 38, § 31, a direct remedy by a bill in equity is given for the enforcement of such a claim, and that under this provision the liability may be properly regarded as constituting an absolute debt of the stockholder. There are two suffi-cient answers to this suggestion. It is a misconstruction of this section, to assert that it gives a direct remedy against the stock-holder as on a debt or charge for which he is personally liable. No bill can be maintained under it against the stockholder until after a judgment has been obtained against the corporation for the debt. The remedy by bill in equity under § 31 is given

51 *

instead of that provided by the preceding section, that is, in lieu of a right to levy an execution, issued on a judgment rendered against the company, on the person or property of the individual stockholder. But it is not given in the place of the judgment against the corporation. As such judgment must be obtained before the creditor could have any remedy by means of a levy of execution on the person or property of the stockholder, so also he must obtain it before he can maintain his bill under § 31, which is only a substitute for such levy.* But the better and more decisive answer is, that the statute of 1851, already cited, essentially modifies the right of the creditor to maintain a bill in equity under Rev. Sts. *c.* 38, § 31. Equity must follow the law. The effect of the provisions of *St.* 1851, *c.* 315, is not merely to alter the remedy of a creditor against a stockholder, or the mode of enforcing the debt, but also essentially to change the nature and character of the liability. If it could have been held to be direct and absolute under the provisions of Rev. Sts. *c.* 38, it is clearly not so under the subsequent enactment. The alteration in the remedy involved a material modification in the right; or, in better phrase, the legislature adapted the remedy to enforce a right which was contingent and not absolute. It would be unreasonable, if not absurd, to suppose that the intention of the statute was that a stockholder should be more directly and absolutely liable for corporate debts in one mode of proceeding than in another; that a more rigid rule should be administered for the enforcement of such debts in equity than at law. We certainly should not adopt any such conclusion unless it was the unavoidable result of the interpretation of the language of the statute. But no such construction is necessary. The different provisions of the statutes are susceptible of a much more reasonable interpretation. Being *in pari materia,* the enactments are to be construed together as parts of one and the same legislative act. In this view it is clear that the right or liability is the same, whether it is sought to be enforced in law or in equity.

* See *Cambridge Water Works* v. *Somerville Dyeing & Bleaching Co.* 4 Allen, 239.

The *St.* of 1851, *c.* 315, so far as it affects stockholders, is a repeal of and substitute for Rev. Sts. *c.* 38, § 30, which prescribed the remedy at law in favor of creditors against stockholders. The provision in § 31 is therefore to be read and construed in the same manner as if it was preceded by the provisions contained in *St.* 1851, *c.* 315. In this view, the remedy in equity against a stockholder is in lieu of that which is given by proceedings at law, that is, he may be held liable on a bill in equity after the creditor has failed to satisfy his judgment against the corporation by levying his execution upon the corporate property or upon that of the officers of the corporation. This interpretation is consistent with true canons of exposition, and harmonizes the different provisions of the statute. The result is that, both at law and in equity, the liability is only a qualified and limited one, and in no just sense a debt for which the stockholder is absolutely liable.

This conclusion, to which the construction of the statutes leads, is fortified by some considerations of a general nature. The proof of the debts of a corporation, for which stockholders are liable, against their separate estate in insolvency, as debts for which they were absolutely liable, would produce great confusion and embarrassment in the administration of the insolvent law, and be in some respects inconsistent with its manifest scope and purpose. The right of proof could not be confined to debts due from insolvent corporations. It would extend to all debts of every corporation, for which the insolvent might be liable under the statute, whether payable or not, whatever might be their amount, and without regard to the ultimate solvency of the corporation and their ability to pay their debts when they should fall due. If the proof were allowed, the assignees, in behalf of the estate, would have a remedy over against the corporation for the amount paid by them as a dividend thereon, or, if the corporation were unable to pay, then for contribution against the other stockholders. This might render it necessary to keep the insolvent estate open and unsettled for many years. No provision is made for set-off of debts due from the corporation to the insolvent, nor for marshalling assets in order to meet this class of

debts.    Creditors of the corporation could prove their debts against the estate, vote in the choice of assignees, decide the question of the right of the debtor to his discharge, and in effect control the whole proceedings, to the practical exclusion of those who were his immediate creditors.    The debtor is required to make out and deliver to the messenger a schedule of his creditors and of their place of residence, with the sum due to each, as well as of the nature of the debt and the consideration thereof, and whether it is secured by mortgage, pledge or otherwise.    How can that provision be complied with, if the debts of a corporation, for which the insolvent may be liable, are to be regarded as his debts provable against his estate ?    A stockholder cannot defend against a debt due from the corporation on the ground that it is not due, or that it has been paid, or that for other reasons no recovery should be had against the corporation.    *Holyoke Bank* v. *Goodman Paper Manuf. Co.* 9 Cush. 576.    Can the assignee, who represents the stockholders, resist the proof of such claim, and contest the debt in proceedings in the nature of a suit at law on an appeal ?    These and similar considerations seem to show that the liability of stockholders for the corporate debts was not intended to be included among the class of debts which could be proved in insolvency against the estate of an insolvent stockholder.

It is urged as one ground for allowing such claims to be proved, that, if they are excluded, an insolvent debtor may be left liable to a large amount of debts from which he cannot be discharged.    No doubt this is true.    But there are many claims from which no discharge can be obtained under proceedings in insolvency, such as contingent debts, executory covenants, guaranties and the like.    Those debts only are discharged, which are provable against the estate.    Whether they are provable cannot be determined by the inconveniences or hardships which may enure to a debtor by reason of his inability to procure a discharge from them.

Many of the considerations which have been suggested are applicable to the claim of the plaintiff to prove against the estates of the officers of the corporation.    But this part of the

case can be disposed of very briefly. If the right to make such proof is put on the provision of Rev. Sts. c. 38, §§ 19, 29, it cannot be supported, because the liability thereby created is not a debt, but a right of action in behalf of a creditor for neglect or omission to perform certain official duties. If it is put on the provision of *St.* 1851, *c.* 315, then it is a secondary liability only, by which the property of the officers is made subject to seizure on execution, if the judgment against the corporation is not first satisfied out of the corporate estate. *Decree affirmed.*